(No. 4297—

WILLIAM A. FALLS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1952.*

HERMAN R. TAVINS, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, William A. Falls, filed his claim in this Court, alleging that he, at all times mentioned, was and is still a member of the National Guard of the State of Illinois, and that this action is instituted pursuant to the Military and Naval Code of the State of Illinois.

On June 11, 1949, while under orders, and in the exercise of due care and caution for his own safety and the safety of other members of his Company enroute to Camp Logan on a National Guard truck, claimant was struck with a rifle butt across his eyes, which resulted in the serious impairment of his vision. He lost a great deal of time from his employment, and incurred many bills in endeavoring to cure himself of said injuries; and, as a result of which, he has had to have repeated operations on his eye. He now seeks to recover from the State reimbursement for monies expended for medical expenses, loss of time, and such further amounts as the Court might deem equitable and fair for his injuries.

The facts show that William A. Falls was 36 years of age, and was injured while enroute to Camp Logan for rifle practice as a member of the National Guard of the State of Illinois. Claimant was lying asleep in the bed of a truck when a rifle fell, striking him across the eyes, and causing the injuries for which he seeks compensation. Claimant is married, the father of three minor children, ages 10, 9 and 4, and at the time of his injury was employed as a postal clerk in the City of Chicago, Illinois.

The facts further show that prior to the accident the claimant earned $3,770.00 a year as a postal clerk, and worked extra time as a waiter earning as much as

$30.00 to $40.00 a week. Since the accident, he has continued to work as a postal clerk, and his yearly salary averages $4,100.00. However, he has not been able to do the extra work, which he did prior to the accident.

The evidence further discloses that the injuries to claimant's eyes have necessitated two operations; on both occasions he was hospitalized and absent from his employment about sixteen weeks. The facts show that he lost about $1,100.00 in salary, as well as an estimated $2,500.00, which he would have been able to make as a waiter in the meantime. Claimant testified that he has not been reimbursed for the time he was absent from his employment, nor for $350.00, which he paid to the Provident Hospital, $234.00 paid to Dr. Brooks, $12.00 for glasses, as well as some sums for medication. The facts further disclose that the State did reimburse him for the first operation, including hospitalization and medical expenses.

It was shown that at the time of the accident, claimant's health was good, and that he had had no previous injury to his eyes, other than an infection in the right eye, which occurred some time in the year 1937. This necessitated the wearing of glasses for several years, but for the last ten years he had not worn glasses at all. The evidence further shows that he had been employed in the United States Post Office in the City of Chicago for some time, which position required the use of his eyes in the sorting of mail, examining addresses, and in other duties, all of which indicate his eyes were in good condition immediately prior to the injuries in question. It is not necessary to detail all of the facts, other than to state that the record is replete with evidence showing that the claimant did receive rather

serious injuries to his eyes as a result of the accident in question.

The Board of Inquiry, under the National Guard Act, in its report recommended reimbursement to the claimant for hospital and doctor bills, time lost through civilian occupation, payment of all drug bills incurred as a result of the accident, and reimbursement for stenographic duties performed in connection with the examination.

Claimant consulted Dr. Roosevelt Brooks in Chicago, who diagnosed the condition as being a detached retina of the right eye, and recommended an immediate operation. Claimant was operated on for this particular condition, and on February 1, 1950 suffered a recurrence. On February 22, 1950, he went back to Provident Hospital for another operation.

The testimony of Dr. Thaddeus Frank Bush, a Lieutenant Colonel connected with the National Guard, and the report of the Board of Inquiry, show that the injuries complained of were received in the line of duty; that claimant was not under the influence of alcohol or drugs at the time, and that as a result of the accident claimant has a detached retina in one eye. Dr. Bush testified that, from an industrial standpoint, claimant has lost 51.1% vision in his right eye, and 32.2% vision in his left eye. He further testified that a detachment of the retina will occur in over 60% of similar cases following operations.

There is no dispute as to the injuries having occurred while claimant was in the performance of his duties as a member of the National Guard, nor is there very serious dispute about the nature and extent of his injuries. Apparently, the only question involved is the amount of damages to be allowed to claimant.

This Court, in similar cases, has seen fit to take as a guide, but not as a fixed rule, the provisions of the Illinois Workmen's Compensation Act in determining what payment would be reasonable for the loss of same. The Court feels that, under the present circumstances, the previous decisions of this Court in accepting the Workmen's Compensation Act as a guide applies with equal force to the case here.

Section 8 (e) of the Workmen's Compensation Act provides in the event of loss of vision in an eye, payment of 50% of the average weekly wage during 120 weeks. The Act further provides that for the permanent partial loss of a member, or sight of an eye, payment of 50% of the average weekly wage during that proportion of weeks provided for the loss of such member, or the sight of an eye, which the partial loss of use thereof bears to the total loss of use of such member, or sight of eye.

Claimant's compensation rate, based on the fact that he was the father of three children under sixteen years of age dependent on him for support on the date of the accident, would be $23.40 per week. From the evidence in this case, the Court concludes that the claimant is entitled to an award for 25% permanent partial loss of use of the left eye, and 50% permanent partial loss of use of the right eye. Using the Compensation Act as a guide, and applying the percentage of loss in this case, the Court finds that the claimant would be entitled to the sum of $2,106.00 for the permanent partial loss of use of both eyes.

The Court further finds that the claimant lost 16 weeks of work, which, figured at the compensation rate of $23.40 per week, would be the sum of $374.40, which is hereby awarded to the claimant.

The Court further finds that claimant shall be reimbursed for medical payments in the amount of $320.80, and the amount of $233.00 payable to claimant for the use of Dr. Roosevelt Brooks.

An award is, therefore, entered in favor of claimant, William A. Falls, in the sum of $3,034.20.